492 P.2d 877 (1971)
Jess LEWIS and John Rush, Plaintiffs-Appellees,
v.
Carl MARTIN, dba Tri-State Construction Company, et al., Defendants-Appellees,
Louis Miller and Elizabeth Miller, Defendants-Appellants.
No. 70-409.
Colorado Court of Appeals, Div. I.
December 21, 1971.
*878 Mellman, Mellman & Thorn, P.C., Gerald N. Mellman, Denver, for plaintiffs-appellees.
Jon K. Mulford, Granby, for defendants-appellees.
Edward A. Jersin, Denver, for defendants-appellants.
Selected for Official Publication.
PIERCE, Judge.
This is an appeal of an action to foreclose mechanics' liens. The record indicates that Martin, d/b/a Tri-State Construction Co., hereinafter referred to as the "general contractor" or by name, was hired by the Millers, hereinafter referred to as the "owners" or by name, to construct a shell cabin on property owned by the Millers. Lewis and Rush, hereinafter referred to as the "carpenters" were employees of the general contractor, Martin. Park Lumber Company and Certified Reddi-Mix, Inc., hereinafter referred to as the *879 "materialmen" or by name, furnished lumber and other materials for use in the construction of the Miller home.
The carpenters filed mechanics' liens for wages due for their work on the building. Mechanics' liens were also filed by the materialmen for materials sold to the general contractor for use in the Miller home. On November 15, 1968, the carpenters brought suit to establish and foreclose their mechanics' liens upon the Miller property. On February 27, 1969, the entire building collapsed. The materialmen thereafter intervened in the action and sought to foreclose their mechanics' liens. The Millers answered and alleged that the materials incorporated into their premises did not enhance the value of their property. They prayed for a judgment against the carpenters and the general contractor on the ground that the construction contract had not been performed and that the cabin was erected in such an unskillful and negligent manner that it collapsed, resulting in damages to the owners in the amount of $6,000.
Upon trial to court, the general contractor, Martin, did not appear and default judgment was entered against him in favor of the Millers and the materialmen. In its findings of fact and conclusions of law, the trial court found that the construction of the building by the carpenters was faulty, unsatisfactory, and not in accordance with the generally accepted standards of construction in the area. It further found that the collapse completely wrecked the building and that the cost of cleaning up and constructing a new building would be at least equal to or greater in expense than the original contract price. The trial court also found that the materialmen furnished materials at Martin's request; these materials were either delivered Martin or his employees or to the Miller job site; and that they had been incorporated into the house being built on the Miller property.
Based upon these findings, the trial court determined that the carpenters were not entitled to a lien and dismissed their complaint. No appeal was taken from this order.
The trial court further determined that the liens of Park Lumber Company and Certified Reddi-Mix were valid and subsisting liens, and also determined that Park Lumber Company was entitled to a personal judgment against Louis Miller. It is from these judgments that the Millers appeal.

I.
First, the owners claim that because of the collapse of the house, the materials in the structure were worthless and did not constitute an improvement to the property, and thus it was error for the trial court to find the materialmen's mechanics' liens valid as against their land. They further assert that an indebtedness is a prerequisite to the establishment of a valid mechanic's lien and that due to the destruction of the house no such indebtedness existed here.
The owners' contention that no indebtedness existed is not persuasive. They assert that Bishop v. Moore, 137 Colo. 263, 323 P.2d 897 supports their position. In that case, our Supreme Court stated:
"A prime requisite to the establishment of a valid mechanic's lien is that an indebtedness exists in favor of the claimant for labor or materials. Where the labor or materials furnished are in breach of the contract and so unsatisfactory as to require that either or both be redone at equal or greater expense, clearly they are without value to the property owner and do not constitute an indebtedness."
Bishop, however, has no application here. There, a mechanic's lien was claimed for labor where the work of the claimant himself was specifically found to be worthless. In the case at hand, we are dealing with the lien of materialmen for materials supplied for the construction of this building. There has been neither claim nor proof that the materials provided at the request of the general contractor were either defective, unsuitable, or not required for the building. There is no allegation of any *880 wrongdoing on the part of the materialmen.
Under C.R.S.1963, 86-3-1 et seq., the lien of a materialman is independent of the contract between the owner and the principal contractor. Armour & Co. v. McPhee & McGinnity Co., 85 Colo. 262, 275 P. 12; see 2A E. King Colorado Practice § 2421 (2d ed. 1970). It is the general rule that, under a statute providing for such an independent materialman's lien, defective work done by the general contractor or his employees, which results in damage or a lack of benefit to the owners, does not deprive a materialman of his right to a lien. Halsey v. Waukesha Springs Sanitarium Co., 125 Wis. 311, 104 N.W. 94; W. H. Pipkorn Co. v. Tratnik, 161 Wis. 91, 152 N.W. 141; see Kobayashi v. Meehleis Steel Co., 28 Colo.App. 327, 472 P.2d 724; 53 Am.Jur.2d Mechanic's Liens § 54; Annot., 16 A.L.R. 981; 57 C. J.S. Mechanics' Liens § 112. The trial court's determination that the materialmen's liens were valid is therefore affirmed.

II.
The owners next assert that the trial court erred in determining that Louis Miller had ratified the account of Park Lumber Company with the general contractor and in entering a personal judgment against him in favor of Park Lumber Company. As their first ground for this error, they assert that the entry of a personal judgment against him was outside the scope of the pretrial order entered in this case. C.R.C.P. 16(c). We disagree. The pretrial order entered herein broadly covered the matters to be determined at trial and we do not think that it bears such a narrow and exclusive reading. The trial court, in its order denying plaintiff's motion for new trial, clearly stated that "The question of whether defendants Miller were personally liable to Park Lumber Company was included in and contemplated in the pretrial order. Also, it was recognized as an issue by all counsel and by the court, ...." It is clear from the record that all parties understood the personal liability of the Millers to Park Lumber Company was at issue.
The Millers further assert that, even if the issues relating to a personal judgment were before the court, there was no evidence from which the court could have found a ratification which would support a personal judgment. The record shows, however, that the entry of a personal judgment against Louis Miller in behalf of Park Lumber Company was fully supported by the evidence.
In Hayutin v. Gibbons, 139 Colo. 262, 338 P.2d 1032, the Supreme Court of Colorado defined ratification as the adoption and affirmance, either expressly or by implication, by one person of the prior act of another which did not bind him but which was done or professed to be done on his account, whereby the act is given effect as though originally authorized. Testimony in the case at hand indicates that at one point in the construction Park Lumber Company ceased delivering lumber to the job site. Thereafter, the attorney for the defendant, Louis Miller, wrote the following letter to Park Lumber Company:
"Please be advised that I represent Mr. Louie Miller who contracted with Tri-State to build a shell cabin in Grand Lake. I have discussed this matter with my client and Mr. Martin of Tri-State, and it has been agreed that upon completion of the contract by Tri-State my client will make his check payable to Tri-State and to the suppliers of the material.
"Accordingly, I would appreciate your sending me a copy of your final statement on this job."
In its findings of fact and conclusions of law, the trial court found that:
"The letter from Millers' attorney to Park Lumber Company, constituted a promise to pay by defendant Miller. This was relied upon by Park Lumber Company and deliveries were thereafter resumed. This letter amounted to a ratification of the Park Lumber Company *881 account by defendant Miller, and is a sufficient basis for personal judgment against defendant Miller, for the amount due Park Lumber Company."
The issue of ratification is a fact question to be determined by the trial court and where, as here, the evidence supports the trial court's finding of an express promise to pay, upon which the seller relied, such finding will not be disturbed upon review. Hayutin, supra.
The owners' contention that they could not be subjected to personal judgment because their promise to pay was conditional upon the completion of a contract, which the trial court expressly found was not substantially performed, is without merit. The issue here is the owners' ratification of the general contractor's account with Park Lumber Company, not the performance of the contractor's obligation to the owners. It is the rule in Colorado that the ratification of such an account may not be made conditional upon the principal's suffering no loss. International Harvester Co. v. Edwards, 76 Colo. 531, 233 P. 164. A principal who has accepted the benefits of a contract made by his agent may not ratify only part thereof and reject the rest. New Mexico Potash & Chemical Co. v. Oliver, 123 Colo. 268, 228 P.2d 979; Colorado Finance Co. v. B. F. Bennet Oil Co., 110 Colo. 1, 129 P.2d 299; Wheelock v. Hondius, 74 Colo. 400, 222 P. 404; National Bank v. Wildman, 71 Colo. 247, 205 P. 947. The trial court's entry of personal judgment against defendant, Louis Miller, is hereby affirmed.

III.
The owners next assert that it was error for the trial court to fail to enter a joint judgment against the carpenters, as well as the contractor, and contend that the contractor and carpenters were jointly and severally liable. The carpenters contend, however, that there is nothing in the pretrial order which contemplated judgment against them as requested by the Millers. We agree. In its pretrial order, the trial court stated that certain issues of fact and law "and no others" were to be litigated at trial. The liability of the carpenters for damages resulting from their negligent construction of the building was never an issue in this case. Evidence of their negligent construction related only to the validity of their liens. We therefore find no error in the trial court's failure to enter joint judgment which would include the general contractor and the carpenters. C.R.C.P. 16; Ferguson v. Hurford, 132 Colo. 507, 290 P.2d 229. See Annot., 22 A.L.R.2d 599.
The owners' further designations of error are found to be without merit.
Judgment affirmed.
SILVERSTEIN, C.J., and ENOCH, J., concur.