**JARDINE'S PROFESSIONAL COLLISION REPAIR, INC., Appellant,**

v.

**Wayne Allen GAMBLE, Appellee.**

**Civ. No. 2:98CV497G.**

United States District Court, D. Utah, Central Division.

March 3, 1999.

Bruce L. Richards, Dean Stewart, Bruce L. Richards & Associates, Salt Lake City, UT, for Appellant.

David T. Berry, Berry, Bertch & Birch, P.C., Murray, UT, for Appellee.

**MEMORANDUM DECISION AND ORDER**

GREENE, District Judge.

This matter is before the court on appeal from the Order and Judgment of Sanctions Against Jardine's Towing for Violation of Automatic Stay, entered May

---

29, 1998 by Honorable John H. Allen, United States Bankruptcy Judge. Both parties have submitted appellate briefs, and oral argument was presented to the Court on November 24, 1998. Appellant Jardine's Professional Collision Repair, Inc. ("Jardine's") was represented by Bruce Richards and Dean Stewart of Bruce L. Richards & Associates. Appellee Wayne Gamble ("Gamble" or "debtor") was represented by David Berry of Berry, Bertch & Birch, P.C. After argument, the case was submitted for decision and taken under advisement. Being fully advised, the court renders its Memorandum Decision and Order.

### Jurisdiction and Standard of Review

The appellant has elected to appeal to the United States District Court as the forum for appellate review pursuant to 28 U.S.C. § 158(c)(1). Accordingly, jurisdiction is here exercised under 28 U.S.C. § 158(a) to review this appeal.[1] In doing so, this Court accepts the Bankruptcy Court's findings of fact, whether based on oral or documentary evidence, under the "clearly erroneous" standard of review. Bankr.Rule 8013; *Carpenter v. Berkeley Federal Bank & Trust FSB*, 200 B.R. 47, 48 (D.Colo.1996); *see also Sender v. Heggland Family Trust*, 48 F.3d 470, 472 (10th Cir.1995). Matters of law are reviewed de novo. *Id.* Rules for applying the "clearly erroneous" standard are set forth in *Taylor v. IRS*, 69 F.3d 411, 415 (10th Cir. 1995):

> A finding of fact is clearly erroneous only if the court has the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972). *Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 555 (10th Cir.1995). (internal citations omitted)

### Factual Background

On February 4, 1998, debtor appellee Gamble filed a Chapter 7 bankruptcy proceeding. Draper Bank & Trust Company, a creditor of Gamble who apparently had been notified of his bankruptcy, authorized West Coast Recovery Service to repossess Gamble's 1988 Chevrolet Suburban from his private residence. West Coast Recovery in turn called Jardine's Towing Company at 1:12 a.m. on February 6, 1998, to make the repossession and to remove the vehicle on West Coast's behalf and under its direction and supervision. Although Jardine's occasionally responds to tow calls which involve repossessing vehicles, it is not specifically in the repossession business and it had no preexisting relationship in this regard with either Draper Bank or West Coast Recovery.

Cory Huish was the Jardine's employee who responded to West Coast's tow call in the early morning of February 6, 1998, and he promptly drove to the Gamble residence. At a hearing before the Bankrupt-

1. 28 U.S.C. § 158 provides:
   (a) The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; ... An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving. ·

   \*  \*  \*  \*  \*  \*

   (c) Subject to subsection (b), each appeal under subsection (a) shall be heard by a 3–judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—(the appellant or any other party) elects ... to have such appeal heard by the district court.

cy Court on February 18, 1998, at which Jardine's was not present, Gamble testified that he spoke to Jardine's on the morning his vehicle was towed and informed the driver (presumably Huish) of the bankruptcy proceedings. Jardine's did not appear at the February hearing claiming lack of notice, and subsequently motioned the Bankruptcy Court to set aside its Order, which motion was set for hearing on March 13, 1998. At that hearing, counsel for Jardine's proferred to the court that Gamble had informed not Huish but a West Coast representative about the bankruptcy. It was represented to the judge that it was the West Coast representative who told Huish of the bankruptcy, and that Huish was told that it was nevertheless appropriate and permissible for Jardine's to go ahead with the repossession. It was further represented to the Bankruptcy Court that two Salt Lake County Sheriff Deputies arrived at the scene while Gamble's car was being towed. Apparently a West Coast representative on the scene showed the Sheriff Deputies the paperwork relating to the repossession, whereupon they apologized for any interruption and did not further interfere with Jardine's in going ahead with the repossession. When the deputies left, Huish successfully towed the Suburban to West Coast Recovery's lot at approximately 730 West South Temple, Salt Lake City, Utah. By way of affidavit submitted to the court, Huish maintains that he did not know that towing the vehicle was in violation of the automatic stay in bankruptcy, and that he had good reason to believe that he was fully authorized to repossess the vehicle notwithstanding the bankruptcy.

Gamble subsequently brought action against Draper Bank & Trust and Jardine's for violating the automatic stay imposed under § 362 of the Bankruptcy Code. Draper Bank & Trust entered into a separate settlement agreement with debtor regarding the alleged violation of the § 362 automatic stay, which settlement was approved by the Bankruptcy Court and Draper Bank has paid Gamble in accordance with the terms thereof.

By Order dated May 29, 1998, the bankruptcy judge imposed sanctions for willful violation of the automatic stay, but the record is unclear whether the sanctions were based on evidence presented at both the February and March hearings or solely on the February hearing. In any event, the order provided for $1 in actual damages, plus $1,000.00 for attorney's fees, and $20,000.00 in punitive damages to be enhanced by $1,000.00 per day for every day after 10 days from date of the order that the amount remains unpaid, up to a maximum of $50,000.00.

Jardine's challenges the May 29, 1998, judgment on the basis that (1) Jardine's did not willfully violate the automatic stay; (2) debtor Gamble was not injured by Jardine's conduct; and (3) the circumstances surrounding Jardine's involvement in this case did not warrant punitive damages in the amount of $20,000.00.

### *Analysis*

■ A valid automatic stay pursuant to § 362 precludes all proceedings against a debtor immediately following the filing of a bankruptcy petition. Legislative history clearly reflects Congress' intent to provide broad protection to debtors under these circumstances:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978); reprinted in 1978 U.S.Code Cong. & Admin.News 5787 at 5840, 6296–97.

Subsection (h) was added to section 362 in 1984 in order to compensate debtors and punish parties for willful violations of the automatic stay:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 28 U.S.C. § 362(h).

Jardine's argues that the term "willful" for purposes of § 362(h) requires a *deliberate and intentional violation of the stay.* Gamble argues that the term "willful" only has to do with *deliberate and intentional acts which lead to a violation of the stay.*

In *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court recently interpreted another section of the bankruptcy code which provides for "willful injury" as related to non dischargeability of debt. The subsection in question, § 523(a)(6), prevents discharge of an individual debtor from any debt "for willful and malicious injury ... to another." The Court referred to Legislative Reports and held that the section requires willful injury and not just willful and intentional acts which cause injury:

> The word "willful" in (a)(6) modifies the word "injury," indicating that non-dischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."

*Id.* at 977, *see also S.Rep. No. 95–989, p. 79 (1978); H.Rep. No. 95–595, P. 365 (1977).* Although, the Tenth Circuit has not defined "willful" as it is used in § 362(h), Judge Winder of the District Court of Utah has ruled that the term should be construed narrowly, requiring conduct which deliberately or intentionally violates the bankruptcy stay. The court said:

> Because section 362(h) provides broad compensatory and even punitive remedies for a violation of the automatic stay, the provision contains fairly rigid threshold requirements. In particular, subsection (h) only provides a remedy for willful violations of the stay. For purposes of section 362(h), "willful" means deliberate or intentional.

*Utah State Credit Union v. Skinner,* 90 B.R. 470, 474 (1988) (citations omitted). The analysis in *Skinner* relative to § 362(a) is consistent with the Supreme Court's interpretation of "willful" under § 523(a).

Appellees argue that § 523(a)(6) and § 362(h) are at opposite ends of the spectrum in the Bankruptcy Code as to their very purpose and that the term "willful" does not mean the same thing in each section because § 362 seeks to protect the debtor and the bankruptcy estate, while § 523 is the narrowly construed exception to discharge. Furthermore, appellee cites to a recent decision by the United States Bankruptcy Appellate Panel of the Tenth Circuit as support for their definition of "willful" under § 362(h). The Appellate Panel said:

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

*Diviney v. NationsBank of Texas,* 225 B.R. 762 (10th Cir. BAP 1998), 211 B.R. 951 (Bankr.N.D.Okla.1997), citing *INSLAW, Inc. v. United States (In re INSLAW, Inc.),* 83 B.R. 89 (Bankr.D.D.C. 1988). Bankruptcy Judge Allen's interpretation of the term "willful" in § 362(h) was similar to the interpretation by the Appel-

late Panel. In the March 13 1998 ruling from the Bench, the court said,

> I believe that the law requires only as pertaining to the willfulness, only knowledge, only a knowing act. It doesn't have to be malicious, bad spirited, but only knowing.[2] (Tr. p. 4—March 13 1998)

This court on de novo review is persuaded that under § 362(h) the word "willful" modifies the words "violation of a stay." The same reasoning adopted by the Supreme Court to the effect that the word "willful" modifies the word "injury" in § 532(a) applies with equal force to the term "willful violation of a stay" in § 362(h). In § 532(a) nondischargeability requires an intentional or deliberate *injury*. In § 362(h) the specified sanctions require an intentional or deliberate *violation* of the stay. Had Congress merely intended to punish deliberate or intentional acts which lead to or cause violation of the stay, the statutory language might have been "willful *acts which cause* violation of the stay" or words to that effect. If Congress had intended to punish any violation of the stay simply because of knowledge of the existence of the stay, it easily could have said so. Manifestly, the plain meaning of the statute requires an intentional or deliberate violation of the automatic stay itself. The Section does not require malicious intent or mean spiritedness, but the violation must be shown to be willful, i.e., intentional or deliberate, and not merely a knowing violation.

Based upon the foregoing, this court vacates the award of sanctions imposed by the bankruptcy judge, and remands the case for further proceedings consistent with this memorandum decision and order. The court should conduct an evidentiary hearing to supplement the existing record, and render findings of fact as to whether there was a "willful violation of the stay" within the meaning of the term "willful" in § 362(h) as herein defined. The court should also determine whether "appropriate circumstances" exist to support an award of punitive damages for such willful violation, and if so how such punitive damages are to be measured as related to actual damages and injuries sustained.

IT IS SO ORDERED.

---

**2.** The court's May 29, 1998 Order was similar, providing that: "Willfulness requires a knowing act, not a malicious or mean spirited act."